

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

**FILED**
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ MAY 0 6 2013 ★

BROOKLYN OFFICE

RITA FLEMING,

        Plaintiff,

  v.

THE CITY OF NEW YORK, Police Officer
Michelle Fernandez, Tax #951726, Police
Officer Maricano, Shield 29875, Lt. Van Dyke,
Police Officer John Doe #1

        Defendants.

**CIVIL COMPLAINT**

**INDEX NO.**

GLEESON, J.
LEVY, M.J.

**CV 13    2719**

## I. PRELIMINARY STATEMENT

1. This is a civil rights action against the Defendant parties, individually and collectively, for violation of Plaintiff's guaranteed constitutional and civil rights.

2. This action arises out of the plaintiff's assault and battery, false arrest, and the excessive use of force during that arrest.

3. The Plaintiff seeks monetary damages for the unconstitutional acts and state law violations which have caused injury and damage to her.

## II. JURISDICTION and VENUE

4. Jurisdiction of this Court is invoked pursuant to and under 28 U.S.C. Sections 1331 and 1343 (a) in conjunction with the Civil Rights Act of 1871, 42 U.S.C. Section 1983, and the Fourth and Fourteenth Amendments to the United States Constitution.

5. The value of the rights in question is in excess of $75,000.00 exclusive of interest and costs.

6. The Plaintiff also invokes the jurisdiction of this Court in conjunction with the Declaratory Judgment Act, 28 U.S.C. Sections 2201, et. seq., this being an action in which the Plaintiff, while seeking monetary damages, also seeks declaratory and injunctive relief if such is deemed necessary and desirable and in the interest of justice in order to provide the Plaintiff with a full and complete remedy for the violation of her rights.

7. The plaintiff requests that the Court exercise its supplemental jurisdiction under 28 U.S.C. § 1367 over all state claims raised in this action which are based upon the same operative facts as the federally based claims.

### III. JURY TRIAL DEMANDED

8. Plaintiff demands a trial by jury on each and every one of her claims as set forth below.

### IV. CONDITION PRECEDENT

9. Prior to the filing of this complaint, and within the time prescribed by law, a sworn Notice of Claim stating, among other things, the time when and the place where the injuries and damages were sustained, together with plaintiff's demands for adjustment thereof were duly served on the plaintiff's behalf upon the City of New York and the individually named defendants.

10. The City of New York has refused or neglected for more than 30 days and up to the commencement of this action to make any adjustments or payment thereof, and that thereafter, and within the same time provided by law, this action was commenced.

### IV. PARTIES

11. Plaintiff Rita Fleming is a black American female citizen, born in New York and a

2

resident of the City of New York, County of Queens, State of New York.

12. Fleming is currently 43 years of age.

13. Fleming resides in Queens County with her three children.

14. Fleming is approximately 5'3" tall.

15. Defendant THE CITY OF NEW YORK is and was at all times relevant a municipal entity created and authorized under the Laws and Constitution of the State of New York to conduct law enforcement activities within the state of New York.

16. Defendant Michelle Fernandez is a Police Officer employed by the City of New York and is and was, at all times relevant, duly appointed and acting as an officer, servant, employee and agent of defendant the City of New York.

17. Defendant Fernandez was at all times relevant acting in the course and scope of her duties and functions as an officer, servant, employee and agent of defendant the City of New York and the New York City Police Department with the power and authority vested in her by defendant THE CITY OF NEW YORK.

18. Notwithstanding the wrongful and illegal nature of her acts and conduct as hereinafter described, she was otherwise performing and engaging in conduct incidental to the performance of her lawful functions in the course of her duties.

19. Defendant Maricano is a Police Officer employed by the City of New York and is and was at all times relevant duly appointed and acting as an officer, servant, employee and agent of defendant the City of New York.

20. Defendant Maricano was, at all times relevant, acting in the course and scope of his duties and functions as an officer, agent, servant and employee of defendant City of New York

3

and the New York City Police Department with the power and authority vested in him by defendant THE CITY OF NEW YORK.

21. Notwithstanding the wrongful and illegal nature of his acts and conduct as hereinafter described, he was otherwise performing and engaging in conduct incidental to the performance of his lawful functions in the course of his duties.

22. Defendant Van Dyke is a Police Lieutenant employed by the City of New York and is and was at all times relevant duly appointed and acting as an officer, servant, employee and agent of defendant the City of New York.

23. Defendant Van Dyke is and was at all times relevant acting in the course and scope of his duties and functions as an officer, agent, servant and employee of defendant City of New York and the New York City Police Department with the power and authority vested in him by defendant THE CITY OF NEW YORK.

24. Notwithstanding the wrongful and illegal nature of his acts and conduct as hereinafter described, he was otherwise performing and engaging in conduct incidental to the performance of his lawful functions in the course of his duties.

25. Defendant John Doe #1 ( JD # 1) is a Police officer employed by the City of New York and is and was at all times relevant duly appointed and acting as an officer, servant, employee and agent of defendant the City of New York.

26. Defendant JD # 1 is and was at all times relevant acting in the course and scope of his duties and functions as an officer, agent, servant and employee of defendant City of New York and the New York City Police Department with the power and authority vested in him by defendant THE CITY OF NEW YORK.

4

27. Notwithstanding the wrongful and illegal nature of his acts and conduct as hereinafter described, he was otherwise performing and engaging in conduct incidental to the performance of his lawful functions in the course of his duties.

## V. FACTS

28. On or about September 28, 2012 at approximately 8:45 PM plaintiff was stopped at a red light in her private vehicle, a white 2004 Infiniti I35, in Queens County at the southbound corner of Guy Brewer Boulevard and 111th Avenue.

29. Plaintiff's maintained a New York State driver's license and her vehicle was lawful in all respects.

30. As the light changed and plaintiff began to proceed, she noticed Officer Fernandez, on foot, approach the driver side of her vehicle.

31. Plaintiff proceeded in her vehicle heading home not having any reason to believe that Officer Fernandez sought to engage her.

32. A short time later, plaintiff's vehicle was approaching the 113 Pct. when a marked police van pulled up behind her vehicle and over the police vehicle loudspeaker instructed her to pull her vehicle over.

33. Plaintiff did as she was instructed to do and pulled her vehicle over on Baisley Boulevard in front of the 113 Pct.

34. Two male white uniformed officers approached the vehicle; one came to the driver's side and one came to the passenger side of the vehicle.

35. Plaintiff was instructed by one officer to turn off her engine and she complied.

5

36. Plaintiff's son was then instructed to exit the vehicle and he complied.

37. Plaintiff's son was then searched outside the vehicle.

38. Plaintiff was then asked by uniformed male white officer (JD #1) to exit the vehicle.

39. Plaintiff questioned: "What happened?" "What did I do?"

40. JD #1 responded by reaching into the plaintiff's vehicle, placing one hand on her left arm and another hand on her left shoulder and forcibly and physically dragging plaintiff out of her vehicle.

41. After yanking plaintiff from her vehicle, JD #1 forcibly twisted the plaintiff's left arm behind her back causing her to spin around.

42. Having forced plaintiff's arm behind her back, JD #1 grabbed plaintiff's right wrist and handcuffed her.

43. JD #1 and other officers then lifted plaintiff off her feet and then proceeded to repeatedly slam plaintiff into the side of the police van.

44. Plaintiff screamed out: "Hey you are hurting me!!" to which JD #1 responded by slamming plaintiff's face into the window of the van.

45. JD #1 used physical and excessive force against the plaintiff beyond the force any reasonable and prudent law enforcement officer would use under the circumstances.

46. JD # 1 engaged in the assault and battery of the plaintiff in that JD #1 created a reasonable apprehension in plaintiff of an immediate and harmful contact and did, in fact, engage in a harmful and offensive physical contact with the plaintiff for no legitimate reason or purpose.

46A. As a result of this offensive contact plaintiff was rendered sore and bruised with

6

contusions to her chest and face.

47. JD #1 had no lawful justification for his behavior and contact with the plaintiff.

48. JD # 1 had no probable cause to detain the plaintiff because she did not engage in any criminal offense nor was there any reason to believe that she had committed a crime.

49. Plaintiff was then dragged by JD #1 through the precinct parking lot into the 113th Pct.

50. Plaintiff was brought before Lieutenant Van Dyke for arrest processing.

51. Plaintiff advised the Lieutenant that what was happening was unlawful and she wanted to speak with the Deputy Inspector/Commanding officer.

52. Lieutenant Van Dyke rhetorically stated to plaintiff: "You want to throw names around and threaten my cops with names?" "Take her inside."

52A. Lieutenant Van Dyke, despite having the authority and duty to do so, did not correct or address the behavior of JD #1.

53. Plaintiff was brought into an arrest processing room and handcuffed to a bar.

54. Plaintiff suffers with asthma and began to experience shortness of breath as a result of the stress.

55. Plaintiff also began to experience the beginning of a migraine headache as a result of the unprovoked violent battery and assault to her body, face and head.

56. Plaintiff requested to go to the hospital because she became concerned she would suffer a full blow asthma attack or a migraine headache.

57. Plaintiff was also experiencing pains and discomfort in her chest and thought she was having a heart attack.

7

58. Plaintiff requested medical assistance and an ambulance was called to the precinct to render medical assistance.

59. Plaintiff was provided oxygen at the precinct and other medical assistance.

60. Plaintiff engaged in a discussion with one of the officers about how she would be transported to the hospital because the officer was advising her that he needed to place her legs in restraints to transport her.

61. Plaintiff advised the officer that she did not wish to be shackled to be taken to the hospital and this officer became upset.

62. Shortly thereafter, Lieutenant Van Dyke approached plaintiff and loudly state: "You are going to the hospital!"

63. Lieutenant Van Dyke then grabbed plaintiff's free right hand and twisted it behind her back and stated: "You are getting on my nerves and you are going to the hospital!"

64. The Lieutenant directed an officer present to restrain plaintiff's feet in a plastic tie while handcuffing her hands behind her back.

64A. Van Dyke engaged in the use of force beyond any force any reasonable and prudent law enforcement officer would use under the circumstances in directing that plaintiff's legs be shackled together in order to transport her to a hospital for medical treatment.

65. Plaintiff stated to the Lieutenant that she should not be shackled like a slave and she had done nothing wrong to him.

66. Police officer Fernandez and another male officer violently yanked plaintiff off the bench on which she was sitting and dragged her across the floor.

67. Other males being detained in a cell close by witnessed what was happening and began yelling at the officers to stop abusing the plaintiff.

68. Officer Fernandez used forced beyond the force any reasonable and prudent law enforcement officer would use under the circumstances in yanking plaintiff off a bench and dragging her across the floor.

69. Officer Fernandez engaged in the assault and battery of the plaintiff in that Officer Fernandez created a reasonable apprehension in plaintiff of an immediate and harmful contact and did, in fact, engage in a harmful and offensive physical contact with the plaintiff causing plaintiff to be rendered sore and bruised.

70. Realizing there were witnesses, the Lieutenant directed the officers to pick plaintiff up and place her in a chair and shackle her legs.

70A. Lieutenant Van Dyke, despite having the authority and duty to do so, did not correct or address the behavior of Officer Fernandez; he sanctioned and encouraged it.

71. The officers then dragged the chair in which the plaintiff was sitting to a waiting ambulance after which plaintiff was transported to a hospital handcuffed and shackled the entire time.

72. At some point while at the precinct, Plaintiff requested that Officer Fernandez give plaintiff's belongings to her son.

73. Plaintiff advised her son to call her lawyer and when her son attempted to use plaintiff's cellphone Officer Fernandez tried to grab the phone from him.

74. Another police officer, Rivera, then approached and grabbed her son's wrist, twisted it and grabbed his mother's phone.

75. Officer Fernandez then proceeded without cause or justification to remove all of plaintiff's personal belongings from her person and vouchered each personal item from the plaintiff's wallet and pocket book.

76. There was no justifiable reason for confiscating and searching plaintiff's personal property and removing it from her.

76A. Fernandez vouchered each and every item in plaintiff's wallet and on her person allegedly for "safekeeping", despite the fact plaintiff's family members were present and were willing to accept plaintiff's personal property.

77. Officer Fernandez also vouchered the plaintiff's private vehicle.

78. Officer Fernandez vouchered each and every item in the plaintiff's personal vehicle including the floor mats, DVDs, compact discs, sunglasses, jumper cables and many other items.

78A. These items were pretextually vouchered for "safekeeping", despite the fact plaintiff's family members were present and were willing to accept plaintiff's personal property.

78B. Fernandez utilized a legitimate police process for an illegitimate purpose in that Fernandez acted vindictively against the plaintiff in vouchering all of these belongings for no legitimate purpose.

78C. Fernandez vouchered this property to further annoy and inconvenience the plaintiff who would be forced to retrieve all of her personal belongings from police custody after she was released from custody.

79. Officer Fernandez had no justifiable reason or cause to search plaintiff's vehicle

and confiscate each and every item in the vehicle.

80. When the ambulance arrived at the precinct, Plaintiff received oxygen to assist her breathing.

81. At the hospital, plaintiff received a chest x-ray and other treatments, including an EKG because of a rapid heart-beat and palpitations.

82. While at the hospital Sgt. Jared Hospedales shield 3299, tax 936782, a male NYPD uniformed officer, approached the plaintiff with different restraints to replace the plastic ties on her legs.

83. Plaintiff requested the phone number for internal affairs from him.

84. Upon returning to the precinct from the hospital, plaintiff requested to make a phone call and was permitted by Officer Fernandez to make the call in her presence but when Officer Fernandez realized that Plaintiff was speaking with internal affairs she hung up the telephone on her.

85. A second police officer, Officer Maricano, approached the plaintiff and grabbed Plaintiff's arm, twisted it back, threw her onto a bench and cuffed her to a bar.

85A. Plaintiff experienced a shooting pain in her right shoulder up to her neck.

86. Plaintiff advised him that he had acted unlawfully and injured her, to which he replied he was allowed to use excessive force to arrest someone.

87. Plaintiff advised Maricano to stay away from her and leave her alone.

87A. Maricano used forced beyond the force any reasonable and prudent law enforcement officer would use under the circumstances.

87B. Maricano engaged in the assault and battery of the plaintiff in that Maricano created a reasonable apprehension in plaintiff of an immediate and harmful contact and did, in fact, engage in a harmful and offensive physical contact with the plaintiff.

88. Sometime later, Officer Fernandez uncuffed plaintiff from the bar and told plaintiff that she was being moved into a cell in the rear of the precinct.

89. Plaintiff advised Fernandez that she preferred not to be brought into the back of the precinct by herself.

90. Fernandez ignored this and brought plaintiff into the back of the precinct in the presence of Maricano.

91. Plaintiff asked where she was being taken and Maricano told her to be quiet and twisted her arm around and, as they entered a back area, Maricano slammed plaintiff's face into a cell gate and then pushed her inside a cell.

91A. Maricano used forced beyond the force any reasonable and prudent law enforcement officer would use under the circumstances.

91B. Maricano engaged in the assault and battery of the plaintiff in that Maricano created a reasonable apprehension in plaintiff of an immediate and harmful contact and did, in fact, engage in a harmful and offensive physical contact with the plaintiff.

92. Plaintiff feared for her life.

93. Sometime later, plaintiff advised Fernandez she had to use the bathroom and Fernandez moved plaintiff to another cell and uncuffed her to use the bathroom.

94. Plaintiff then remained in this cell until she was transported to central booking.

95. Maricano was one of the officers that transported Plaintiff to central booking.

12

96. Maricano continued to taunt plaintiff.

97. According to the Patrol Guide procedures 202-13 and 202-14 of the New York City Police Department, Lieutenant Van Dyke, a platoon commander and desk officer, was responsible for all police operations within the command during his tour; he had a duty to supervise the arrest processing; Van Dyke had the duty to question officers regarding circumstances of an arrest to ensure there was probable cause for such; Van Dyke had the duty to supervise the performance of officers while processing arrests; Van Dyke had a duty to ensure compliance with department policies and procedures; VanDyke had a duty to ensure that officers did not use excessive force; VanDyke had a duty to ensure the safety of every prisoner in the precinct; and Van Dyke had a duty and responsibility to ensure that the officers he supervised did not act vindictively and abusively toward the plaintiff without lawful justification and cause.

98. Van Dyke breached the above noted duties by failing to properly supervise the arrest processing of the plaintiff and by permitting and by sanctioning her arrest by Fernandez absent probable cause; Van Dyke breached the above duties by failing to properly supervise subordinate officers by permitting same to use excessive force against the plaintiff causing her injury; Van Dyke failed to ensure plaintiff's safety; and Van Dyke permitted, encourage and ratified the vindictive treatment of the plaintiff by the officers he supervised.

99. As a result, Plaintiff sustained injuries in that she was unlawfully arrested, unlawfully confined and physically injured by police officers that were not properly supervised by Van Dyke.

100. The injuries sustained by the plaintiff were the proximate cause of Van Dyke's

breach of his duties.

101.  Officer Michelle Fernandez charged the plaintiff with reckless endangerment in the second degree PL 120.20; obstructing governmental administration PL 195.05 and a violation of the vehicle and traffic law for equipment failure VTL 375-2A(1) for a defective driver's side head light.

101.  The plaintiff's vehicle did not have a defective driver's side head light and there was no probable cause for placing her under arrest for this offense.


102.  Plaintiff did not engage in reckless endangerment and there was no probable cause for placing her under arrest for this offense.

103.  Plaintiff did not engage in obstructing governmental administration and there was no probable cause for placing her under arrest for this offense.

104.  On September 29, 2012 the plaintiff was confined and held and caused to appear before Judge T. Serita in Queens Criminal Court to answer for these offenses.

105.  Plaintiff asserted a not guilty plea and in exchange for three days community service the criminal case against her was dismissed in its entirety and sealed on October 9, 2012 by Judge M. O'Donoghue.

109.  Each of the individually named police officers in this action had a duty to uphold the laws and the constitution of the United States and protect the liberty of each citizen, including the plaintiff; each individual police officer took an oath in this regard; each individually named police officer had a duty to ensure that plaintiff would only be arrested and confined based upon probable cause that she had committed a criminal offense; each

14

individually named officer was responsible for the safety and treatment of the plaintiff and each individually named police officer had a duty and responsibility to use only that force which was necessary to protect themselves or someone else.

110.   Each of the individually named officers in this action breached the above noted duties and responsibilities because Fernandez charged the plaintiff with criminal offenses with no probable cause for a collateral purpose which was vindictive with no lawful purpose or authority; because Fernandez and Joe Doe #1 and Maricano engaged in the excessive and unnecessary use of force against the plaintiff; because all of the individually named officers unlawfully confined the plaintiff without just cause; each of the individually named police officers failed to provide for the plaintiff's safe treatment.

111. The above noted breach of duty was the proximate cause of plaintiff's injuries.

112. There was no basis for the arrest and custodial detention of plaintiff by New York City Police Officers each of whom is an agent and employee of the City of New York.

113. Among the officers involved in the actions and conduct described in this claim, the arresting officer is Police Officer Fernandez.

114. There was no probable cause for the arrest of plaintiff.

115. Plaintiff was falsely arrested and treated with disdain, disrespect and rudeness.

116. There was no basis for the handcuffing and shackling of Plaintiff.

117. There was no basis for the imprisonment of Plaintiff.

118. Plaintiff was confined at the precinct, at the hospital and at Queens Central booking by the defendant officers acting individually and collectively because she was not free to leave.

119. Plaintiff was conscience of the confinement and did not consent to being confined and the confinement was not privileged.

120. The arrest was propelled by a collateral objective and improper motive in that this arrest was propelled by the highly developed quota system in the New York City Police Department which requires officers to issue summonses and make arrests or face adverse employment action, such as loss of vacation time or days off or assignments.

121. The arrest and confinement described in this claim were propelled by the highly developed quota system/policy in the New York City Police Department which requires officers to make issue summonses, arrests or face adverse employment actions, such as loss of vacation time or days off or assignments.

122. Commissioner Kelly, as the final policy maker of the police department, has developed and implemented a system of quotas mandating numbers of arrests, summons and stops and frisks.

123. This quota system policy is utilized throughout the New York City Police Department and exerts pressure on police officers to "produce" arrest numbers and summonses without consideration whether such arrests are valid or not.

124. This policy causes officers to seek out arrests where there is no probable cause for such and no basis for the handcuffing and imprisonment of an individual, and, by such, to generate arrest statistics and to otherwise use such arrests as examples of crime reduction in the 113 Pct. and the effectiveness of the commanding officer in this Precinct.

125. Arrest statistics are used to advance the careers of command officers and line officers to the detriment of those arrested based upon this policy.

126. These policies and practices have a disproportionate impact on individuals of color who, because of their race and/or color such as plaintiff, are often times singled out for such arrests.

127. These policies and practices have a disproportionate impact on communities of color, such as section of Rockaway Queens, inhabited largely by individuals of color who are disproportionately affected by the quota system.

128. Plaintiff is a victim of this quota system because her arrest was not motivated by probable cause but by the need of these officers to generate arrest statistics.

129. Plaintiff was unlawfully taken into custody and falsely arrested and subjected to excessive and unreasonable and unnecessary detention and racially discriminatory conduct and otherwise unlawful, unnecessary and unreasonable conditions associated with her detention and custodial arrest including handcuffing.

130. Pursuant to the above noted policies, Officer Fernandez was compelled to effect an arrest and this arrest was placed in her activity report and tracked as part of her mandated quota.

131. Pursuant to the above noted policies, Van Dyke receives credit for the productivity (arrests) which take place under his supervision.

132. If Van Dyke does not demonstrate productivity, he faces the possibility of punishment or other adverse actions.

133. Van Dyke, as a supervisor, is forced to make sure the arrest quota policy is enforced and effective leading to his participation and ratification, absent any meaningful inquiry, into the arrest of Van Dyke.

17

134. The action, conduct, policies and practices and customs herein described violated plaintiff's rights as guaranteed under the Fourth and Fourteenth Amendments to the United States Constitution and the Civil Rights Act of 1871, 42 USC Section 1983.

135. The actions, conduct, policies and practices and custom violated Plaintiff's rights under the law and Constitution of the State of New York including false arrest, excessive, unnecessary and unreasonable detention, and an unlawful handcuffing and associated excessive, unnecessary, and unreasonable force and detention.

136. The actions, conduct, policies and practices and customs were negligent and otherwise the proximate cause of the injuries and damages suffered by Plaintiff

137. Plaintiff now suffers with physical injuries, fear and anxiety, mental distress, humiliation, embarrassment, a sore and painful shoulder, loss of sleep, appetite and the inability to lift and use her right arm as she once did.

138. Plaintiff has not yet placed an exact monetary value on the damages (above the jurisdictional limit of this Court) which she has incurred although she believes them to be substantial and to include compensatory damages against the City of New York and compensatory and punitive damages against the officers involved for her unlawful arrest, loss of liberty, unlawful confinement, excessive use of force, and other claims as described below.

139. The City of New York is liable for the actions of its employees under a theory of respondeat superior or vicarious liability for the torts alleged in this action.

## FIRST CAUSE OF ACTION:
### FALSE ARREST

140. The plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

141.  Each defendant, by their conduct and actions in falsely arresting plaintiff, without lawful justification, negligently, intentionally, maliciously, and with a deliberate indifference to or a reckless disregard for the natural and probable consequences of their acts, collectively and individually, caused injury and damage in violation of plaintiff's constitutional rights, state constitutional rights and tort law.

142. The City of New York is responsible for this conduct pursuant to the above stated policies, practices and customs and the violation of the constitution of the United States and state law.

143. Plaintiff suffered injuries and damages.

### SECOND CAUSE OF ACTION:
### FALSE IMPRISONMENT

144. The plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

145.  By their conduct and actions in falsely imprisoning plaintiff, without lawful justification, negligently, intentionally, maliciously, and with a deliberate indifference to or a reckless disregard for the natural and probable consequences of their acts, defendants, collectively and individually, caused injury and damage in violation of plaintiff's constitutional rights, state constitutional rights and tort law.

146. The City of New York is responsible for this conduct pursuant to the above stated policies, practices and customs and the violation of both the constitution of the United States and state law.

147. Plaintiff suffered injuries and damages.

### THIRD CAUSE OF ACTION:
### MALICIOUS PROSECUTION

148. The plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set herein.

149. The defendants commended a criminal proceeding against the plaintiff by and through her arrest, the proceeding was terminated in her favor in that the charges were dismissed; there was no probable cause for the commencement of a criminal proceeding against the plaintiff and the proceeding was instituted with actual malice due to the wrong or improper motive of the defendants in effecting an arrest to fulfill an arrest quota not because there was probable cause for such.

150. Defendants were not motivated by a lawful purpose but by the need to generate arrest numbers.

151. The City of New York is responsible for this conduct pursuant to the above stated policies, practices and customs.

152. Plaintiff suffered injuries and damages.

### FOURTH CAUSE OF ACTION:
### DENIAL OF DUE PROCESS

153. The plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set herein.

154. The plaintiff was subjected to a denial of due process and loss of liberty by the defendants as afforded to her by the constitution of the United States and the State of New York.

20

155. The City of New York is responsible for this conduct pursuant to the above stated policies, practices and customs.

156. Plaintiff suffered injuries and damages.

### FIFTH CAUSE OF ACTION:
### EXCESSIVE USE OF FORCE

157. The plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

158. By their conduct and actions in using excessive force against plaintiff, without lawful justification, negligently, intentionally, maliciously, and with a deliberate indifference to or a reckless disregard for the natural and probable consequences of their acts, defendants, collectively and individually, caused injury and damage in violation of plaintiff's constitutional rights, state constitutional rights and tort law.

159. The City of New York is responsible for this conduct pursuant to the above stated policies, practices and customs.

160. Plaintiff suffered injuries and damages.

### SIXTH CAUSE OF ACTION:
### ASSAULT AND BATTERY

161. The plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

162. By their conduct and actions in placing plaintiff in fear and apprehension of offensive contact and in offensively having physical contact with the plaintiff, the defendants,

collectively and individually, caused injury and damage and engaged in the assault and battery of the plaintiff.

163. The City of New York is responsible for this conduct pursuant to the theory of respondeat superior or vicarious liability.

164. Plaintiff suffered injuries and damages.

## SEVENTH CAUSE OF ACTION:
## NEGLIGENCE

165. The plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

166. By their conduct and actions, individually and collectively, each defendant breached a duty owed to the plaintiff.

167. As a consequence of this individually and collectively each officer breached a duty owed the plaintiff as detailed above, thereby causing injury to Plaintiff.

168. The City of New York is responsible for the conduct of its agents and employees pursuant to the theory of respondeat superior or vicarious liability.

**WHEREFORE,** plaintiff demands the following relief jointly and severally against all of the defendants:

a. Compensatory damages in an amount to be determined at the time of trial;

b. Punitive damages against the individually named defendants;

c. The convening and empanelling of a jury to consider the merits of the claims;

d. Attorney fees and costs,

e. Such other and further relief as this court may deem appropriate and equitable.

Dated: New York, New York

May 2, 2013

Respectfully Submitted,

Meenan & Associates, LLC
*Attorney for Plaintiff*
64 Fulton Street, Ste 502
New York, New York 10038
(212) 226-7334

By: _____

Colleen M. Meenan
CM7439
cmm@meenanesqs.com

23